FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL 26 2017

JUDGE CHARLES R. NORGLE
U.S. District Court Judge

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 16 CR 108 |
| v. | Judge Charles R. Norgle |
| COLLIN COON | |

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, JOEL R. LEVIN, and defendant COLLIN COON, and his attorney, JOSHUA G. HERMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with three counts of possession of a firearm by a convicted felon, in violation of Title 18 United States Code, Section 922(g)(1) (Counts 1-3).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant

with possession of a firearm by a convicted felon, in violation of Title 18 United States Code, Section 922(g)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about September 16, 2015, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Collin COON ("COON"), previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting interstate commerce, a firearm, namely a Taurus PT-25 pistol, with an obliterated serial number, which firearm had traveled in interstate commerce prior to defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

More specifically, in 2015, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating individuals unlawfully selling firearms and narcotics in and around Joliet, Illinois. In the course of that investigation, the ATF employed a variety of law enforcement tactics, including the use of a confidential source ("CS"). On or about September 12, 2015 continuing through September 15, 2015, the CS and COON communicated with each other, in person and over the telephone, regarding the sale of a pistol. On or about the evening of September 15,

2

2015, COON agreed to sell a pistol to the CS for $350. The following morning, on or about September 16, 2015, COON and the CS exchanged text messages and agreed to meet at a location in Joliet, Illinois. Later that morning, the CS drove a vehicle to the agreed upon location and waited for COON. Shortly thereafter, COON entered the CS's vehicle, sat beside the CS and immediately removed a Taurus PT-25 pistol with an obliterated serial number from inside his pants and placed the pistol on the floor between the two front seats. COON indicated to the CS that the pistol was loaded with bullets. The CS and COON then began to again discuss the price of the pistol. After further negotiation, COON agreed to reduce the sale price of the pistol from $350 to $330. The CS then paid COON $330 in prerecorded funds for the pistol. COON left the pistol with the CS and exited the vehicle with the $330 in prerecorded funds.

In addition to selling the CS a firearm on September 16, 2015, COON also sold the CS firearms on two other occasions. More specifically, on or about August 24, 2015 continuing through August 25, 2015, COON and the CS communicated with each other, in person and over the telephone, regarding the sale of a shotgun. After such communication, on or about the morning of August 25, 2015, COON agreed to sell the shotgun to the CS for $250. COON and the CS then agreed to meet at a location in Joliet, Illinois. Later that afternoon, the CS drove a vehicle to the agreed upon location. When the CS arrived at the location, COON entered the CS's vehicle and placed the bag he was holding behind the front seats of the vehicle and sat down

in the front passenger's seat. The bag contained a Savage, model 21, 12 gauge shotgun, bearing serial number 16527, and COON indicated to the CS that he thought the shotgun was loaded. The CS then paid COON $250 in prerecorded funds for the shotgun.

Additionally, on or about September 16, 2015 continuing through September 22, 2015, COON and the CS communicated with each other, in person and over the telephone, regarding the sale of a pistol. During such communication, COON indicated that he would sell the CS a pistol for no less than $330. On or about the morning of September 23, 2015, COON and the CS exchanged text messages with each other and agreed to meet at a location in Joliet, Illinois. Later that morning, the CS drove a vehicle to the agreed upon location and waited for COON. Soon after, COON entered the CS's vehicle on the front passenger's side, took a seat next to the CS, and showed the CS a Beretta, model 21-A, .22 caliber pistol, bearing serial number BBS45800U, and told the CS it was loaded. COON indicated that he had just fired the pistol and that pistol barrel still smelled of fresh smoke. The CS and COON then began to again discuss the price of the pistol. After further discussion, the CS paid COON $320 in prerecorded funds for the pistol. COON and the CS then continued to talk, after which time COON left the pistol with the CS and exited the vehicle with the $320 in prerecorded funds.

COON acknowledges that the Taurus PT-25 pistol, with an obliterated serial number; the Savage, model 21, 12 gauge shotgun, bearing serial number 16527; and

4

the Beretta, model 21-A, .22 caliber pistol, bearing serial number BBS45800U all traveled in interstate commerce prior to his possession of the firearms and that the firearms were all manufactured outside the state of Illinois.

COON further acknowledges that prior to August 25, 2015, he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote

5

respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

b. **Offense Level Calculations**.

i. It is the government's position that, pursuant to Guideline § 2K2.1(a)(4)(A), the base offense level for Count Two is 20 since defendant committed any part of the offense subsequent to sustaining one conviction for a crime of violence, namely the attempt robbery, described in paragraph c. ii. below. It is the defendant's position that his prior attempt robbery conviction is not a crime of violence as defined under Guideline § 4B1.2(a) and therefore, pursuant to Guideline § 2K2.1(a)(6)(A), the

6

base offense level for Count Two is 14. Each party is free to present arguments to support their position at the sentencing hearing.

    ii.  Pursuant to Guideline § 2K2.1(b)(1)(A), the offense level is increased 2 levels because the offense conduct, including relevant conduct for which the defendant is accountable, involved three firearms.

    iii.  Pursuant to Guideline § 2K2.1(b)(4)(B), the offense level is increased 4 levels because a firearm had an obliterated serial number.

    iv.  It is the government's position that, pursuant to Guideline § 2K2.1(b)(5), the offense level is increased 4 levels because the defendant engaged in the trafficking of firearms, as described in paragraph 6 above. It is the defendant's position that his sale and transfer of the three firearms to the CS does not amount to the trafficking of firearms as defined under Guideline § 2K2.1(b)(5) and therefore the 4 level increase under that section should not apply. Each party is free to present arguments to support their position at the sentencing hearing.

    v.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

  vi.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, it is the government's position that based on the facts now known to the government and stipulated, in part, below, defendant's criminal history points equal 13 and defendant's criminal history category is VI; while it is the defendant's position, as stipulated, in part, below, that defendant's criminal history points equal 7 and defendant's criminal history category is IV:

  i.  On or about August 26, 2003, defendant was convicted of unlawful possession of a stolen motor vehicle in the Circuit Court of Will County, Illinois and sentenced to thirty months' probation. On or about January 8, 2004, defendant's probation was revoked and he was resentenced to six years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), defendant receives 3

criminal history points for this sentence. It is the defendant's position that defendant receives no criminal history points for this sentence, pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), and that defendant reserves the right to oppose the application of these 3 criminal history points at sentencing.

    ii.  On or about January 8, 2004, defendant was convicted of attempt robbery in the Circuit Court of Will County, Illinois and sentenced to six years' imprisonment. It is the government's position that, pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), defendant receives 3 criminal history points for this sentence. It is the defendant's position that defendant receives no criminal history points for this sentence, pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), and that defendant reserves the right to oppose the application of these 3 criminal history points at sentencing.

    iii.  On or about November 23, 2005, defendant was convicted of aggravated unlawful use of a weapon in the Circuit Court of Will County, Illinois and sentenced to five years and six months' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), defendant receives 3 criminal history points for this sentence.

    iv.  On or about September 30, 2010, defendant was convicted of unlawful possession of a controlled substance in the Circuit Court of Will County, Illinois and sentenced to twenty-four months' probation. Pursuant to Guideline §§ 4A1.1(c) and 4A1.2(e), defendant receives 1 criminal history point for this sentence.

    v.  On or about September 7, 2011, defendant was convicted of unlawful use of a weapon by a felon in the Circuit Court of Will County, Illinois and sentenced to five years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(e), defendant receives 3 criminal history points for this sentence.

   d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 27, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 130 to 162 months' imprisonment, in addition to any supervised release and fine the Court may impose. Pursuant to Guideline § 5G1.1(a), because the statutory maximum penalty for the offense of conviction is 10 years' imprisonment, the applicable advisory guideline sentence is 120 months. It is the defendant's position that the anticipated offense level is 17, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

   e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case.

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $900 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 16CR108.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial

civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

13

      iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

...
...
...

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    19.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

    20.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

    21.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing

16

financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## **Conclusion**

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 7-26-17

By Ronald DeWald
_____
JOEL R. LEVIN
Acting United States Attorney

_____
WILLIAM DUNNE
Assistant U.S. Attorney

_____
COLLIN COON
Defendant

_____
JOSHUA G. HERMAN
Attorney for Defendant

18